## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNIVERSAL DYNAMICS, INC., | ) | CASE NO. 8:08CV391 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| H-P PRODUCTS, INC. and DAN | ) | |
| GAYLORD d/b/a INDEPENDENCE | ) | |
| PORCELAIN ENAMEL, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motions in Limine (Filing Nos. 84 and 86), through which they seek an order of the Court excluding the testimony of the Plaintiff's expert, Jack Hilbert. The parties have submitted briefs (Filing Nos. 87, 88, 106, 111, and 112) and indexes of evidence (Filing Nos. 85, 89, and 105) in support of their respective positions, and have not requested an evidentiary hearing. For the reasons explained below, the motions will be granted in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Universal Dynamics, Inc. ("Universal Dynamics"), a Virginia corporation, brought this action against Defendants H-P Products, Inc. ("H-P Products"), an Ohio corporation, and Dan Gaylord d/b/a Independence Porcelain Enamel ("Independence Porcelain Enamel"), a Missouri resident, invoking the Court's diversity jurisdiction. (Second Amended Complaint, Filing No. 81, ¶ 5.)

In the spring and summer of 2005, Universal Dynamics agreed to sell a "Material Handling System" to another corporation, "Molex," to be used in the processing of plastic products at Molex's plant in Lincoln, Nebraska. (*Id.*, ¶¶ 7-9.) Universal Dynamics then ordered from H-P Products certain components for the Material Handling System, including in-stock tubing, custom tubing with welds and bends, custom tubing with ceramic linings, and various fittings (collectively the "Molex Tubing.") (*Id.*, ¶ 12.) H-P Products then

contracted with Independence Porcelain Enamel to line the Molex Tubing with ceramic coating. (Id., ¶ 13.) Independence Porcelain prepared the Molex Tubing with a glasslike coating inside the tubing, and H-P Products delivered the Molex Tubing for the Material Handling System to the Molex plant site in Lincoln. (*Id*., ¶¶ 16-17.) On or about September 30, 2005, Molex allegedly discovered that plastic products produced in the Material Handling System were contaminated with metallic and black material. (*Id.*, ¶ 23.) Universal Dynamics alleges that the black-material contamination was caused by Independence Porcelain Enamel's defective coating of the Molex Tubing and by excess carbon scaling on the exterior of the tubing, which flaked off during the installation or operation of the Material Handling System; and that the metallic-material contamination was caused by improper welds on the Molex Tubing performed by H-P Products. (*Id.*, ¶¶ 24-25.) On May 11, 2007, Molex and Universal Dynamics entered into a settlement agreement fixing Universal Dynamics' loss at $121,983.13. (*Id.*, ¶ 38.)

Universal Dynamics alleges that it has incurred damages totaling $197,416.52, representing its settlement with Molex, its attorney fees and costs incident to that settlement, and its outlay of funds for parts and services incident to the investigation and remediation of the problems with the Material Handling System. (*Id.*, ¶ 41.) Universal Dynamics presents claims for relief against the Defendants under theories of negligence, breach of express warranties (under both common law and the Uniform Commercial Code), breach of implied warranties, indemnity, contribution, and equitable subrogation. (*Id.*, ¶¶ 43-99.)

Universal Dynamic's expert, Jack Hilbert submitted a timely report on June 15, 2009. A copy of his report (the "Hilbert Report") can be found in Filing Nos. 85-2, 89-2, 89-3 and

2

105-3.[1]   Hilbert has both Bachelor's and Masters of Science degrees in Mechanical Engineering, and is a registered professional engineer in New York, New Jersey, and Pennsylvania.   (*Id*. at 2.)   He has 36 years of experience in the field of pneumatic conveyance and currently serves as a consultant with a material handling systems consulting company.   (*Id*.)   In preparation for rendering his opinion, Hilbert read the depositions of four witnesses in this case, and personally examined two of the carbon steel elbows from the Molex Tubing.   (*Id*., pp. 2-3.)   The opinions in the Hilbert Report do not relate specifically to the quality of the Molex Tubing, however, nor do they relate to any link between alleged defects in the Molex Tubing and the alleged contamination of the Molex plastic products.   His opinions are expressed in terms of the standard of the trade, *i.e.*, how tubing in pneumatic conveying systems is supposed to function; how certain defects in the tubing can affect the function; and how vendors and consumers of such materials generally conduct their business, including their expectations of each other.   Many of his opinions are conclusory, in that they are stated in terms of what is "reasonable," "usable," "suitable," "defective," and "appropriate."   (*Id*., pp.3-4.)

The Defendants have moved in limine, asking the Court to exclude the testimony of Hilbert, arguing that it does not meet the standards of Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999); it is not supported by sufficient facts; it is not supported by reliable principles and methods; and it is subjective and conclusory.   In response, Universal Dynamics asserts that it has no intention of offering Hilbert's testimony to prove that the contaminants allegedly found in the Molex plastics were caused by defects in the Molex Tubing.   Universal Dynamics contends that the discovery of

---

[1]The report is seven pages long, including the cover page, and has a two-page appendix.  The Court will refer to the report by its own pagination, rather than CM/ECF pagination.

contaminants was simply an event that led to the investigation of the quality of the Molex Tubing, and discovery of the alleged defects that required remediation of the Material Handling System.  Universal Dynamics also asserts that when the Defendants deposed Hilbert, they did not make appropriate inquiry about the principles and methods he used when reaching his conclusions, and the Defendants should not now be heard to complain that such principles and methods were unreliable.

## DISCUSSION

"A United States District Court sitting in diversity applies the substantive law of the forum state . . . ."  *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001). A federal court sitting in diversity will also apply federal procedural law.  *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  Accordingly, this Court applies the Federal Rules of Evidence and looks to cases interpreting those Rules, while recognizing that the relevance of any expert's testimony may depend upon questions of substantive law of the forum state, Nebraska.

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Federal Rule of Evidence 104 provides:

(a) Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).
. . . .
(b) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Federal Rule of Evidence 704 provides:

(a) [T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In *Daubert*, the Supreme Court held that trial court judges must act as "gatekeepers" to screen proffered expert testimony to ensure that what is admitted "is not only relevant, but reliable."  509 U.S. at 589.  The Supreme Court emphasized that "[t]he inquiry envisioned by Rule 702 . . . is a flexible one."  *Id.* at 594.  The Supreme Court suggested four factors that trial court judges may wish to consider: (1) whether a theory or technique can be and has been tested, (2) whether it has been subject to peer review or publication, (3) whether it has known or potential error rates and standards, and (4) its general acceptance in the scientific community.  *Id*. at 593-94.  In *Kumho*, the Supreme Court held that trial judges' gatekeeper responsibilities apply to proffers of technical or other specialized knowledge, as well as expert testimony based on science.  526 U.S. at 149.

"Rule 702 does not rank academic training over demonstrated practical experience." *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006).  In *Anderson*, the Eighth Circuit Court concluded that the trial court properly accepted expert testimony about the "structure of a gambling enterprise and jargon employed by the business."  *Id.* at 874.  The Eighth Circuit Court noted that challenges to an expert witness's skill and knowledge may be "considered by the jury in determining the weight to be accorded his testimony."  *Id.* Similarly, the Eighth Circuit Court has accepted expert testimony about customs and practices in other "trades," such as drug trafficking.  *United States v. Ortega,* 150 F.3d 937, 943 (8th Cir. 1998).

The Nebraska Supreme Court, when applying Nebraska Rule of Evidence 702, codified at Neb. Rev. Stat. § 27-702 and mirroring Federal Rule of Evidence 702, also held that "[e]xpert testimony as to the custom and practice of an industry is admissible" when

relevant. *Coppi v. West American Ins. Co.*, 524 N.W.2d 804, 815 (Neb. 1994). For example, in a personal injury case, "expert testimony regarding the general practice in the industry, *i.e.*, guarding [an] open stairwell with rails, provided specialized knowledge and experience to the jury regarding the standard safety practice in a construction zone, which may have helped the jury assess the actions of [the defendant]." *Orduna v. Total Construction Services, Inc.*, 713 N.W.2d 471, 481 (Neb. 2006).

Hilbert's resume, Appendix A to the Hilbert Report, indicates that he has worked as an engineer involved in all phases of the design, manufacture, sale, installation, use, and management of bulk material handling systems, including pneumatic conveying systems, since 1973. His experience in the business is nation-wide and international, and he has lectured and published articles in the trade.

Hilbert is qualified to testify about how bulk material handling systems, including pneumatic conveying systems, function. His specialized knowledge in this area may assist the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, Hilbert is qualified to testify with respect to the information contained in the following parts of the Hilbert Report in pages 4-5, part V: the first, second, third, fourth and fifth paragraphs, and the first two sentences of the eighth paragraph. Some information contained in the sixth and seventh paragraphs of part V may be relevant and admissible, depending upon the evidence presented at trial.

Hilbert is also qualified to testify about customs and practices in businesses involving the purchase, installation, and use of bulk material handling systems, including pneumatic conveying systems. Accordingly, if proper foundation is laid and relevance shown, Hilbert may testify about quality standards in the industry, including what goods and materials are considered to be acceptable and not acceptable as components for pneumatic conveying systems, and what practices are customary in the industry with respect to the ordering, delivery, inspection, installation, use, and repair of such systems.

6

If presented with hypothetical questions fairly representing the facts in evidence, Hilbert may offer an opinion as to whether a material handling system corresponding with the hypothetical system would be acceptable for use in the trade, and what actions would be customary for a consumer in the trade to take upon discovery of problems corresponding with the hypothetical situation.

Hilbert will not be permitted to testify about causation, *i.e.*, whether any alleged defects in the Molex Tubing caused any contamination found in Molex plastic products. Nor will he be permitted to offer an independent opinion about whether the Molex Tubing was defective, although he may testify about his observations of the two carbon steel elbows that he examined.

Accordingly,

IT IS ORDERED:

1.  The Defendants' Motions in Limine (Filing Nos. 84 and 86) are granted in part, as follows:

Plaintiff's expert Jack Hilbert will not be permitted to testify about causation, *i.e.*, whether any alleged defects in the Molex Tubing caused any contamination found in Molex plastic products, nor will he be permitted to offer an independent opinion about whether the Molex Tubing was defective; and

2.  The Defendants' Motions in Limine are otherwise denied, and Plaintiff's expert Jack Hilbert will be permitted to offer testimony consistent with this Memorandum and Order.

Dated this 3rd day of December, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Court

7