**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNIVERSAL DYNAMICS, INC.,** | ) | **CASE NO. 8:08CV391** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **H-P PRODUCTS, INC. and DAN** | ) | |
| **GAYLORD d/b/a INDEPENDENCE** | ) | |
| **PORCELAIN ENAMEL,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motions for Summary Judgment (Filing Nos. 97 and 100). The parties have submitted briefs (Filing Nos. 98, 102, 123, 139[1], 143) and indexes of evidence (Filing Nos. 99, 101, 124, 140, 142) in support of their respective positions. For the reasons explained below, the motions will be granted in part. The Court also grants, herein, the parties' Joint Motion to Preclude In Limine Statements Regarding Insurance (Filing No. 138).

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Universal Dynamics, Inc. ("Universal Dynamics"), a Virginia corporation, brought this action against Defendants H-P Products, Inc. ("H-P Products"), an Ohio corporation, and Dan Gaylord d/b/a Independence Porcelain Enamel ("Independence Porcelain Enamel"), a Missouri resident, invoking the Court's diversity jurisdiction. (Second Amended Complaint, Filing No. 81, ¶ 5.)

In the spring and summer of 2005, Universal Dynamics agreed to sell a "Material Handling System" to another corporation, "Molex," to be used in the processing of plastic products at Molex's plant in Lincoln, Nebraska. (*Id.*, ¶¶ 7-9.) Universal Dynamics then ordered from H-P Products certain components for the Material Handling System, including

---

[1] Independence Porcelain Enamel's Reply Brief also includes an "Objection to Plaintiff's Evidence." The objection has not been docketed as such, and to the extent that it is pending, it is denied as moot.

in-stock tubing, custom tubing with welds and bends, custom tubing with ceramic linings, and various fittings (collectively the "Molex Tubing.")  (*Id.*, ¶ 12.)  H-P Products then contracted with Independence Porcelain Enamel to line the Molex Tubing with ceramic coating.  (*Id.*, ¶ 13.)  Independence Porcelain prepared the Molex Tubing with a glasslike coating inside the tubing, and H-P Products delivered the Molex Tubing for the Material Handling System to the Molex plant site in Lincoln.  (*Id.*, ¶¶ 16-17.)  On or about September 30, 2005, Molex allegedly discovered that plastic products produced in the Material Handling System were contaminated with metallic and black material.  (*Id.*, ¶ 23.)  Universal Dynamics alleges that the black-material contamination was caused by Independence Porcelain Enamel's defective coating of the Molex Tubing and by excess carbon scaling on the exterior of the tubing, which flaked off during the installation or operation of the Material Handling System.  (*Id.*, ¶ 24.)  Universal Dynamics also alleges that the metallic-material contamination was caused by improper welds on the Molex Tubing performed by H-P Products.  (*Id.*, ¶ 25.)  On May 11, 2007, Molex and Universal Dynamics entered into a settlement agreement fixing Universal Dynamics' loss at $121,983.13.  (*Id.*, ¶ 38.)

Universal Dynamics alleges that it has incurred damages totaling $197,416.52, representing its settlement with Molex, its attorney fees and costs incident to that settlement, and its outlay of funds for parts and services incident to the investigation and remediation of the problems with the Material Handling System.  (*Id.*, ¶ 41.)  Universal Dynamics presents claims for relief against the Defendants under theories of negligence, breach of express warranties (under both common law and the Uniform Commercial Code), breach of implied warranties, indemnity, contribution, and equitable subrogation. (*Id.*, ¶¶ 43-99.)

On December 3, 2009, this Court granted, in part, the Defendants' motions in limine, precluding Universal Dynamics' expert, Jack Hilbert, from offering certain testimony. Hilbert is precluded from offering any opinion about the source or causation of contaminants allegedly found in the Molex plastic products, and from offering any independent opinion about whether the Molex Tubing was defective. He may, however, testify about his personal observation of the two carbon steel elbows he examined and he may be permitted to respond to certain hypothetical questions regarding business practices and customs, if the hypothetical questions fairly reflect the evidence as presented through other sources. (Filing No. 117.)

Independence Porcelain Enamel has moved for summary judgment on the basis that Universal Dynamics cannot prove that the enamel coatings applied by Independence Porcelain Enamel were the source of any contaminants allegedly found in the Molex plastic products, or that any defects in the enamel coatings in any way caused such contamination. (Brief, Filing No. 98, pp.12-15). H-P Products has also moved for summary judgment on the basis that Universal Dynamics cannot prove that any defects in the Molex Tubing caused injury and damages, *i.e.*, the contamination of the Molex plastic products and losses related to such contamination. H-P Products notes that the proximate *causation* of injury and damages is a necessary element of each of Universal Dynamics' theories of recovery. (Brief, Filing No. 102, pp. 6-17).

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "Where the nonmoving party will bear the burden of proof at trial on

3

a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [the party's] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib.*, 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

In other words, in deciding "a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment

4

is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

## DISCUSSION

Universal Dynamics' theories of recovery shifted somewhat between the filing of its Second Amended Complaint on October 27, 2009, and the filing of its response to the Defendants' Motions in Limine on November 17, 2009. This shift is best illustrated by reference, first, to paragraph 36 of the Second Amended Complaint (Filing No. 81):

> 36. As a result of the contamination, Molex alleged it incurred a loss related to the unusable, contaminated plastics products. Molex alleged that plastic material it purchased for use in the Material Handling System was contaminated by the defective Molex Tubing and, therefore, was rendered unusable for recycling and reuse in the Material Handling System. As a result of these problems, Molex contended it incurred recall costs, system downtime, employee costs associated with sorting contaminated plastics, the loss of the contaminated plastic. Moreover, <u>the presence of the contamination alerted Molex to the poor quality of the Molex Tubing—namely that did not conform to its descriptions, was not of merchantable quality and was neither fit nor suitable for use in the Material Handling System. The poor quality of the Molex Tubing subsequently necessitated the disassembly and reassembly of the Material Handling System, which caused Molex to incur further costs, including further system downtime.</u> (Emphasis added).

In response to the Defendants' Motions in Limine, Universal Dynamics asserted that "the 'parentage' or source of the contamination [is] not the basis upon which Universal plans to try this matter." (Plaintiff's Brief in Opposition to Motions in Limine, Filing No. 106, p.6.) "[T]he contaminated Molex products were a symptom, **a signal**, of a larger problem: the various defects in the Molex Tubing supplied by IPE and H-P. The efforts of Universal and Molex to remediate the contamination led to the dismantling of the Material Handling System and the discovery of quality control issues which had not been remediated by Defendants' [sic] prior to their shipments of the Molex Tubing to Lincoln. The contamination was, to use a common phrase, 'the canary in the mine' with respect to the quality control issues, including uncleaned weld slag and burrs, uncleaned welding wire, uncleaned and

5

flaking carbon debris and inadequate porcelain coating." (*Id*., p.7, emphasis in original.)

Universal Dynamics repeats these assertions in its Brief in Opposition to Defendants' Motions for Summary Judgment (Filing No. 123, p. 23), but contends that summary judgment is not appropriate on the issue of the source of the contamination of the plastics, because the Defendants admitted responsibility for the contamination, and because the Molex Tubing was a "closed system." After a review of the index of evidence relied upon by Universal Dynamics, the Court cannot conclude that the Defendants, through statements or actions, admitted that the Molex Tubing caused the alleged contamination of the Molex plastic products. Universal Dynamics, therefore, has not met its burden of coming forward with specific facts demonstrating a genuine issue for trial with respect to the Defendants' alleged admissions of liability on the issue of the source of contamination. Regarding the "closed system" theory, Universal Dynamics states that "the System utilizes a pneumatic method of conveyance and is, therefore, essentially 'closed.'" (Brief, Filing No. 123 p. 29). "IN A CLOSED SYSTEM, DEBRIS *CAN ONLY* CONTAMINATE PRODUCTS[.]" (*Id.,* p. 30). It is unclear whether Universal Dynamics means that debris in a closed system can contaminate the plastic products produced in the system and nothing else, or if Universal Dynamics means that contaminated plastic products produced in a closed system must have acquired their contaminants within the system.[2] Regardless, the "closed system" theory does not prove causation.

---

[2]Universal Dynamics' "closed system" theory appears to be akin to a *res ipsa loquitur* argument. "'[W]hen an instrumentality under the exclusive control and management of the alleged wrongdoer produces an occurrence which would not, in the ordinary course of things, come to pass in the absence of the negligence of the one having such management and control, the occurrence itself, in the absence of explanation by the alleged wrongdoer, affords evidence that the occurrence arose as the result of the alleged wrongdoer's negligence.'" *Anderson v. Service Merchandise Co., Inc*., 485 N.W.2d 170, 175 (Neb. 1992), quoting *Widga v. Sandell*, 464 N.W.2d 155, 158-59 (1991). "'The plaintiff is not required to eliminate with certainty all other possible causes or inferences, . . . . All that is needed is evidence from which reasonable persons can say that on the whole it is more likely that there was negligence associated with the cause of the event than that

The Defendants have demonstrated that there is an absence of evidence to support Universal Dynamics' claim that the Molex Tubing caused the alleged contamination of the Molex plastic products. Universal Dynamics, in response, has not produced specific facts demonstrating that genuine issues of material fact remain for trial on that question. Accordingly, Universal Dynamics cannot recover from the Defendants for any amounts Universal Dynamics paid to Molex or otherwise incurred due to the alleged contamination of plastic, but may continue to pursue its theories of recovery with respect to damages related to the remediation of the alleged defects in the Molex Tubing.

## CONCLUSION

The Order on Final Pretrial Conference notes that the following unresolved issue remains before the Court: "Whether Universal's causes of action should be dismissed on the ground that Universal has failed to establish causation." (Filing No. 135, ¶ 79, referencing the pending Motions for Summary Judgment). While Universal Dynamics' causes of action will not be dismissed, its theories of recovery cannot be based on the alleged contamination of the Molex plastic products, because Universal Dynamics has failed to meet its burden of producing specific facts demonstrating the existence of any issue for trial as to causation with respect to the alleged contamination.

---

there was not. It is enough that the court cannot say that the jury could not reasonably come to that conclusion.'" *Id*. at 175-76, quoting Prosser and Keeton on the Law of Torts, Circumstantial evidence - Res Ipsa Loquitur, § 39 at 244 (5th ed. 1984). "[T]he focal point is 'exclusive control,' a requisite element for application of res ipsa loquitur." *Id*., 176. Res ipsa loquitur may apply, however, "in situations when multiple defendants jointly exercise control of an instrumentality that causes harm to the complaining party." *Id*., p. 177. Here, the Defendants did not have exclusive control and management of the "System" used to produce the plastic products.

7

Accordingly,

IT IS ORDERED:

1. The Defendants' Motions for Summary Judgment (Filing Nos. 97 and 100) are granted in part, as follows:

    Plaintiff Universal Dynamics, Inc.'s theories of recovery will exclude any damage related to the alleged contamination of plastic products produced through the use of the Molex Tubing;

2. The Defendants' Motions for Summary Judgment are otherwise denied; and

3. The parties' Joint Stipulation to Preclude in Limine Statements Regarding Insurance (Filing No. 138) is granted.


Dated this 28th day of December, 2009.

              BY THE COURT:

              s/Laurie Smith Camp
              United States District Court